UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL M. OLIVER, JR.,          Case No. 07-15475

        Plaintiff,           Thomas L. Ludington
vs.                      United States District Judge

COMMISSIONER OF        Michael Hluchaniuk
SOCIAL SECURITY,       United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 24, 28)**

## I.    PROCEDURAL HISTORY

### A.    <u>Proceedings in this Court</u>

On December 27, 2007, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Thomas L. Ludington referred this matter to Magistrate Judge Donald A. Scheer

for the purpose of reviewing the Commissioner's decision denying plaintiff's claim

for a period of Supplemental Security Income benefits.  (Dkt. 3).  This matter was

reassigned to the undersigned on January 15, 2008.  (Dkt. 4).  This matter is

currently before the Court on cross-motions for summary judgment.  (Dkt. 24, 28).

### B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on June 12, 2003, alleging that he became unable to work on July 4, 2002. (Dkt. 20, Tr. at 42-42). The claim was initially disapproved by the Commissioner on October 27, 2003. (Dkt. 20, Tr. at 45-48). Plaintiff filed a second application on August 9, 2004, again alleging that he became unable to work on July 4, 2002. (Dkt. 20, Tr. at 49-60). The second claim was initially disapproved by the Commissioner on November 22, 2004. (Dkt. 20, Tr. at 63-66). Plaintiff requested a hearing and on May 2, 2007, plaintiff appeared with counsel before Administrative Law Judge (ALJ) B. Lloyd Blair, who considered the case *de novo*. In a decision by the Appeals Council dated May 24, 2007, the ALJ found that plaintiff was not disabled. (Dkt. 20, Tr. at 26-39). Plaintiff requested a review of this decision on July 23, 2007. (Dkt. 20, Tr. at 24). The Commissioner claimed that the request for review was not received and on August 21, 2007, the Appeals Council determined that plaintiff's request was filed late. (Dkt. 20, Tr. at 21). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 19, 2007, denied plaintiff's request for review. (Dkt. 20, Tr. at 9-11).

Plaintiff filed an appeal with this Court on December 27, 2007. (Dkt. 1). Defendant filed a motion to dismiss, claiming lack of subject matter jurisdiction. (Dkt. 6). On June 19, 2008, the undersigned recommended that defendant's motion to dismiss be denied because a request for appeals' council review had

been timely submitted by plaintiff, that this matter be remanded to the Appeals Council, and that the Court retain jurisdiction. (Dkt. 12). This recommendation was adopted by the Court on August 13, 2008. (Dkt. 16). On remand, the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, Dkt. 20, Tr. at 452-458), the Appeals Council, on January 20, 2009, denied plaintiff's request for review. (Dkt. 5-, Tr. at 5-8); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that plaintiff was not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **DENIED**, and that this matter be **REMANDED** for further proceedings.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.   STATEMENT OF FACTS

### A.   ALJ Findings

Plaintiff was 22 years of age at the time of the most recent administrative hearing. (Dkt. 10, Tr. at 464). Plaintiff's relevant work history included approximately 2 years as a cook and cashier. (Dkt. 20, Tr. at 100). In denying plaintiff's claims, defendant Commissioner considered obesity, asthma, high blood pressure, cor pulmanale, sleep apnea, and borderline intelligence as possible bases of disability. (Dkt. 20, Tr. 31).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity during the period at issue. *Id.* At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 20, Tr. at 34). At step four, the ALJ found that plaintiff could not perform any past relevant work. (Dkt. 20, Tr. at 38). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 20, Tr. at 38-39).

B.  Plaintiff's Motion for Summary Judgment

Plaintiff is 6 feet 2 inches tall and weighs 630 pounds for a body mass index ("BMI") of 80.9.  According to the standards established by the National Institute of Health and adopted by the Social Security Administration, this BMI is equivalent to a Level III or morbid obesity, SSR 02-01p.  Plaintiff was treated for hypertension with medication by his treating physician, Dr. Shaikh at the Center for Family Health in Jackson, Michigan.  This impairment's diagnosis was confirmed by the readings from an arm cuff at Foote Hospital on December 5, 12005.  (Tr. 328).  Plaintiff was treated for the impairment with medication prescribed by his physician Dr. Shahzad Shaikh, M.D. who had diagnosed hypertension in 2004.  (Tr. 354).  Cor pulmonale is failure of the right side of the heart caused by prolonged high blood pressure in the pulmonary artery and right ventricle of the heart.  This impairment was diagnosed by Dr. Shahzad Shaikh, M.D., on July 27, 2006.  (Tr. 341).  With heart failure, the weakened heart cannot supply the cells with enough blood.  This results in fatigue and shortness of breath.  According to plaintiff, everyday activities such as walking, climbing stairs or carrying groceries can become very difficult.  This impairment was diagnosed in Foote Hospital on July 15, 2006 by cardiologist and agreed to by Dr. Shaikh: (AR 42).  Pickwickian syndrome, also known as obesity hypoventilation syndrome, is the combination of severe obesity, obstructive sleep apnea causing hypoxia and

hypercapnia resulting in marked daytime somnolence and chronic respiratory acidosis. This impairment was diagnosed at Foote Hospital on May 11, 2006. (Tr. 290-304). Obstructive sleep apnea (OSA) was diagnosed by Dr. Ryan Charbeneau, M.D., a pulmonologist, after testing at Foote Hospital in February and April 2006. (Tr. 299-304). Plaintiff has suffered with asthma and breathing disorders, like obstructive sleep apnea, for many years and is on oxygen all day, every day. He also uses a CPAP machine, inhalers and a nebulizer as needed. (Tr. 467-468). Dr. Shaikh also cares for this impairment. (Tr. 228)

Nate was tested while in school in 1995 when he was 11 years old by Suzanne Leach, school psychologist and he tested as one who is mildly retarded, IQ of 70. He was reading at the 2.6 year level which meant he read at the functionally illiterate level. (Tr. 168-176). The state agency had him tested by Dr. Thomas M. Horner, Ph.D. on August 20, 2003, whose intellectual capacity testing revealed: "Intellectual assessment: Verbal IQ 80, Performance IQ 78, and a Full Scale IQ of 76. He is reading at a fourth grade level. This results in an AXIS II diagnosis of Borderline intelligence." (Tr. 185-196). According to plaintiff, reading at only at the 4th grade level is equivalent to functional illiteracy. Plaintiff also has severe pain in his low back, legs and feet, especially when his legs and feet swell. Dr. Shaikh has diagnosed this impairment and treats him with prescribed pain medication, Tramadol HCL (Ultram). (Tr. 332-380).

Report and Recommendation
Cross-Motions for Summary Judgment
*Oliver v. Comm'r*; No. 07-15475

SSR 02-01p provides that in the absence of record evidence to the contrary, the ALJ will accept a diagnosis of obesity given by a treating source or by a consultative examiner. Obesity will be considered a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. An impairment will only be found "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities. The ALJ found plaintiff's morbid obesity to be "severe." (Tr. 31). SSR 02-01p explains that the NIH established medical criteria for the diagnosis of obesity in its Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-4083, September 1998). The Clinical Guidelines recognize three levels of obesity: (1) Level I includes BMIs of 30.0-34.9; (2) Level II includes BMIs of 35.0-39.9; and (3) Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss.

According to plaintiff, ALJ Blair was confused by the effects of obesity on the ability to work and its magnification of symptoms from plaintiff's other "severe" impairments:

> The claimant is obese. The undersigned acknowledges that the effects of obesity may not be obvious, and that the combined effects of obesity with other impairments may be greater than might be expected without obesity. The Administrative Law Judge fully considered any accumulative and added effects the claimant's weight plays on his ability to function. In spite of his weight and history of alleged back and leg pain, clinicians observed the claimant ambulated well without an assistive device and to retain functional range of motion. The claimant's neurological functions in terms of motor power, reflex activity and sensation were intact, and his musculoskeletal and extremity reviews were commonly free of deformity, clubbing, cyanosis, heat, discoloration, ulceration, diminished pulsation or atrophic changes. Concerning his averred back disorder, the claimant is not a surgical candidate and he has not participated in physical therapy, aggressive pain management or other rehabilitative measures. The record does not fully support the claimant's expressed degree of fatigue, or his need to recline and elevate his legs for extended intervals on many days. Furthermore, the record does not demonstrate that the claimant's pharmacology regimen engenders functionally limiting side effects.

(Tr. 36). According to plaintiff, the ALJ's finding is inconsistent with the Step II finding that obesity, asthma, high blood pressure, cor pulmonale, sleep apnea, and borderline intelligence were all severe impairments; that is they all significantly limited plaintiff's ability to perform basic work duties. 20 C.F.R. § 416.921; Social Security Ruling 85-28. In addition, according to plaintiff, the medical

evidence of record establishes plaintiff suffers from Pickwickian Syndrome, diabetes type II, metabolic syndrome, functional illiteracy and chronic pain. Plaintiff asserts that the ALJ failed to analyze the effects of obesity and pain on plaintiff's state of health and its effects on his ability to work and its magnification of the effects of his other severe impairments. As stated in the SSR, obesity is not an easy disease to overcome. The advice of a physician to lose weight is a mere starting point and as stated in SSR 02-01p, the disease is complex and not always easily remedied long term. Plaintiff has all of the diseases usually associated with obesity - CAD, HTN, joint and muscle pain, shortness of breath, diabetes and anxiety. Obviously obesity itself is a severe impairment and as the efficient cause of the plethora of other impairments that plaintiff suffers from, has great effects on his ability to perform full time, regular competitive employment. According to plaintiff, the ALJ's recitation of his knowledge that plaintiff is morbidly obese does not replace a carefully analyzed opinion as to how this very severe impairment effects plaintiff's ability to perform substantial gainful employment.

Plaintiff also argues that the ALJ misread the doctors' opinions because they too, diagnosed obesity, low back pain, diabetes, Pickwickian Syndrome, obstructive sleep apnea, asthma and anxiety and indicated that plaintiff had neither the endurance nor the concentration needed to perform full time, regular competitive employment. Since Dr. Shaikh is the doctor who is most familiar with

plaintiff's history, including the objective medical evidence, much of which he requested, his opinions ought to count for something. Plaintiff further asserts that his opinions are supported by the findings of the consulting examiner for the State Agency, Dr. Bharti Sachdev, M.D. (Tr. 177-184). Dr. Sachdev diagnosed plaintiff with diabetes, high blood pressure, low back pain, morbid obesity and intellectual deficits. The ALJ is required to evaluate all the medical opinions and he should have accepted as controlling, or at least very weighty, the opinion of the long term treating physician. In this case, according to plaintiff, the medical evidence of record does not contain substantial evidence contrary to Dr. Shaikh's opinions consistently expressed that his patient's limitations are disabling, an opinion the vocational expert shared.

Plaintiff also argues that the ALJ's credibility findings were flawed. The ALJ made the following credibility finding that partially discredited the plaintiff's testimony concerning the limitations his impairments caused him:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The claimant's style of life is not consistent with that of a person who is disabled or who believes his condition is life-threatening. In spite of recurring instructions from clinicians, the claimant has apparently not engaged in serious attempts to diet and lose weight. Further, for the majority of the period at issue, the claimant continued

> smoking in the face of his purported cardiopulmonary
> difficulties. The claimant is aware of the complicity of
> his smoking and obesity in relation to his health. There
> were extended intervals when the claimant was not
> receiving regular physician-led or other health care.

(Tr. 36). According to plaintiff, the ALJ is required by this ruling to consider all witness statements from "other persons about the symptoms and how they affect the individual . . . ." Tammie Ganaway, plaintiff's mother, submitted a statement corroborating plaintiff's claims of imitations, which, according to plaintiff, were not considered by the ALJ since it was not mentioned in his decision. (Tr. 83-91). Rather, the ALJ found plaintiff less than fully credible because of his lack of surgery and aggressive medical treatment for pain and the extent of his daily activity level. (Tr. 36). Plaintiff argues, however, that the ALJ's conclusion was not supported by the record because the ALJ mischaracterized the record in order to justify his credibility findings. Specifically, plaintiff suggests that the ALJ's description of plaintiff's daily activities is overstated and contrary to plaintiff's testimony. (Tr. 463-473). In addition, plaintiff filed an Activities of Daily Living form that was consistent with his testimony and his mother's statement. (Tr. 92-99). His activities were carried out when he feels like it and a little bit at a time, contrary to the ALJ's findings that would lead one to believe there was little or no problems with plaintiff's performing activities of daily living.

Plaintiff asserts that he has proven his disability according to the statutes and regulations and requests that the Court reverse the Commissioner's final administrative action and grant his SSI benefits from his alleged onset of disability, July 4, 2002. In the alternative, plaintiff requests that the Court remand this case under sentence four to fully consider the opinions of plaintiff's treating physician, to fully analyze the effects of his extreme obesity in accordance with SSR 02-01p, and to fairly consider his credibility.

C.     Commissioner's Motion for Summary Judgment

According to the Commissioner, the above quoted portion of the ALJ's decision was sufficient consideration of plaintiff's obesity, and its effect (or lack thereof) on his other impairments. The Commissioner asserts that the ALJ combined the effect of all of plaintiff's impairments in his RFC finding for light work that did not require lifting over 20 pounds or more than two hours of standing or walking. (Tr. 35). This analysis is sufficient and the Commissioner argues that plaintiff fails to point to any reversible defect.

According to the Commissioner, the ALJ rejected Dr. Shaikh's opinion because it was not well-supported by the objective medical evidence, particularly Dr. Shaikh's own progress reports. (Tr. 37–38). In response, plaintiff has not produced any findings from Dr. Shaikh's progress reports that support his opinion of total disability. Thus, according to the Commissioner, the ALJ's rejection of Dr.

Shaikh's opinion is clearly supported by substantial evidence and should not be disturbed.

As part of his credibility analysis, the ALJ considered plaintiff's activities. (Tr. 37). The Commissioner asserts that plaintiff failed to provide any record support for his claim that the ALJ mischaracterized his activities because he carried them out "when he feels like it and a little bit at a time." As plaintiff's argument lacks factual support, according to the Commissioner, it must fail. Moreover, the ALJ noted that plaintiff did light household cleaning "at a measured pace," and that he stopped mowing his lawn altogether. (Tr. 37). The ALJ recognized, therefore, that plaintiff's ability to perform activities was limited. According to the Commissioner, the first prong of plaintiff's credibility argument, therefore, lacks merit.

The second prong of plaintiff's credibility attack is that the ALJ did not mention plaintiff's mother's statement of his activities. As the Sixth Circuit has explained, however, "Given the ALJ's lengthy discussion of the lack of objective evidence supporting these claimed physical limitations, we find that the ALJ's failure to mention specifically the mother's letter is not reversible error." (Dkt. 28, p. 13, citing, *Pasco v. Comm'r of Soc. Sec.*, 137 Fed.Appx. 828, 842 (6th Cir. 2005)). The Commissioner urges the Court to reject plaintiff's argument that his

mother's statement "corroborat[es]" his allegations where the ALJ's "omission is not fatal to the ALJ's decision because the same evidence supported discounting both [Oliver's] and her [son's] testimony." (Dkt. 28, p. 13, citing, *Wheeler v. Apfel*, 224 F.3d 891, 896 (8th Cir. 2000)). The Commissioner asserts that the ALJ reasonably considered plaintiff's activities as an element of his credibility analysis, as provided for by the regulations and case law. The ALJ articulated his basis for considering these activities: "The claimant has alleged a general decline in his functionality, and he is no doubt limited to some degree. Still . . . it was reported that the claimant is able to perform certain self-care tasks and other activities." (Tr. 37). Thus, the Commissioner urges the Court to conclude that the ALJ's credibility analysis was supported by substantial evidence and free from reversible error.

## III.  DISCUSSION

### A.  Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits...physical or mental ability to do

basic work activities," benefits are denied without further
analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

        1.    Treating physician and other medical evidence

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating

source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003). Courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for

Report and Recommendation
Cross-Motions for Summary Judgment
*Oliver v. Comm'r*; No. 07-15475

not crediting the opinion of a treating source, as § 1527(d)(2) requires. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion."). The ALJ wrote the following with respect to Dr. Shaikh's opinions:

> The undersigned considered the reports and comments of treating physician Shaikh. In a January 2007 progress note, Dr. Shaikh remarked that he would declare the claimant disabled (Exhibit 46 p. 1). On a medical source statement (Exhibit 51), Dr. Shaikh listed restrictions for the claimant that were incompatible with full time employment; (e.g., the claimant's symptoms would interfere with attention and concentration 75% of the time; impairments would cause claimant to, be absent more than three times monthly). The Administrative Law Judge is not bound by Dr. Shaikh's medical opinion, as it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not wholly consistent with other substantial evidence in the record. As discussed earlier, Dr. Shaikh's own progress reports, and those of other clinicians, do not disclose totally work prohibiting abnormalities, particularly when the claimant is compliant with treatment directives.

With respect this conclusion, while the ALJ's decision contains an extensive recitation of the medical evidence, the ALJ failed to explain why or how Shaikh's opinion was inconsistent with the objective medical evidence. The undersigned

suggests that the ALJ did not give sufficiently "good reasons" for rejecting Dr. Shaikh's opinions, particularly in light of plaintiff's congestive heart failure, leg swelling, along with hypoxemia and other respiratory issues. While there is evidence that these conditions were under control, the ALJ did not analyze the effect that working full-time could have on them. Moreover, in his recitation of the medical evidence, the undersigned suggests that there was some inappropriate "cherry-picking" of the evidence. For example, the ALJ noted taht in February 2006, plaintiff reported that he did not have difficulty with daytime somnolence. However, in January 2006, when he treated with a Dr. Charbeneau, a pulmonologist, it was noted that plaintiff initially denied daytime somnolence, but when "pressed," he admitted that he frequently falls asleep inappropriately such as when riding in the car, watching television or reading. He also reported that his memory had fallen off considerably over the last year or so. In addition, plaintiff suffered from Pickwickian syndrome, which involves, essentially, daytime sleepiness. While an ALJ need not discuss every piece of evidence, here, the ALJ concluded that the record evidence did not support plaintiff's claims of fatigue, which was a critical piece of formulating his credibility analysis and RFC conclusions.

And, when evaluating the opinions of treating physicians, the ALJ must also consider, under some circumstances, contacting the treating source for clarification:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also* 20 C.F.R. § 404.1512(e); *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits.).  To the extent the ALJ viewed Dr. Shaikh's opinions as inconsistent with his own reports and records, the ALJ did not sufficiently explain how or why the medical evidence did not support those opinions.  The ALJ should have at least considered contacting to Dr. Shaikh for clarification, particularly given that Dr. Shaikh treated plaintiff extensively during the entire period in question.  Based on the foregoing, the undersigned suggests that the ALJ did not give sufficiently good reasons for discrediting Dr. Shaikh's opinions.

2.      Credibility

The ALJ found plaintiff's claimed limitations not entirely credible.  He wrote, in part:

> The claimant's style of life is not consistent with that of a person who is disabled or who believes his condition is life-threatening. In spite of recurring instructions from clinicians, the claimant has apparently not engaged in serious attempts to diet and lose weight. Further, for the majority of the period at issue, the claimant continued smoking in the face of his purported cardiopulmonary difficulties. The claimant is aware of the complicity of his smoking and obesity in relation to his health. There were extended intervals' when the claimant was not receiving regular physician-led or other health care.

Plaintiff's medical records are replete with references to the recommendation, by several physicians, for bariatric surgery to treat his obesity. It was noted that he was attempting to go through all the rigorous requirements to obtain approval for this treatment and insurance coverage was a potential barrier. From all accounts, plaintiff has been morbidly obese since he was a young child. Given the progression of his disease even while his application for benefits was pending (weight gain of over 100 pounds, congestive heart failure, addition of 24/7 oxygen therapy, pitting edema in his legs), the undersigned suggests that the ALJ's conclusion that plaintiff was not credible because he just did not try hard enough to lose weight is not appropriate and not based on medical evidence. Moreover, while plaintiff continued to smoke, there is substantial evidence in the record in the record of ongoing, medically-monitored attempts to quit smoking and a reduction in his smoking habits.

The ALJ also found fault with plaintiff's apparent failure to regularly seek medical treatment for his medical conditions during the entire period in question. As noted by the ALJ, there is little question that plaintiff has documented intellectual deficits. The ALJ gave no consideration as to whether and to what extent plaintiff's intellectual deficits impacted both his capacity to seek treatment regularly or to comply with recommended treatment. *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). And, the failure to seek treatment for a period of time may be a factor to be considered against a claimant, *Hale v. Sec'y of Health and Hum. Serv.*, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy her condition, *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990). The ALJ also gave no consideration to whether and to what extent that plaintiff's financial situation impaired his ability to obtain regular treatment or to comply with recommended treatments.

The undersigned suggests that the ALJ overstated plaintiff's activities and their impact on his ability to work on a full-time basis. Plaintiff occasionally used a computer, performed very limited self-care tasks (often requiring assistance and reminders from others), made simple meals, cared for his guinea pig (with assistance from his brother), helped his grandmother mow the lawn (which he was

not later able to do at all), played video games, watched television, and visited with friends. The undersigned further suggests that the ALJ apparently gave no consideration to the reports of plaintiff's activities by his mother and aunt, which confirm his limited ability to perform self-care and to engage in any activity. As noted in this Circuit, "a claimant's ability to do housework, drive, care for his son, read, and visit with friends is not indicative of his ability to engage in substantial gainful activity." *Hunter v. Comm'r*, 2006 WL 2092411, * 3 (E.D. Mich. 2006), citing, *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967). "These tasks can be performed intermittently ... and do not require the sustained effort necessary for any substantial, sustained and regular employment." *Hunter*, at *3, quoting, *Fulwood v. Heckler*, 594 F.Supp. 540, 543 (D. D.C. 1984).

        3.      RFC

    The undersigned further suggests that, given the foregoing conclusions regarding the ALJ's evaluation of the treating physician opinions and credibility, the ALJ's RFC will necessarily have to be reconsidered on remand. The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One

Report and Recommendation
Cross-Motions for Summary Judgment
*Oliver v. Comm'r*; No. 07-15475

does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Much of the ALJ's RFC and credibility determination was based on findings that plaintiff's complaints and subjective limitations were not supported by the medical evidence. Given the foregoing recommendation that the ALJ did not give sufficiently good reasons for rejecting the opinions of Dr. Shaikh and that the ALJ's credibility determination was not grounded in the evidence of record, the RFC will necessarily have to be reevaluated.

      4.      Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is not within that "zone of choice within which decisionmakers may go either way without interference

from the courts," *Felisky*, 35 F.3d at 1035, as the decision was not supported by substantial evidence.

## V.     RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that plaintiff was not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **DENIED**, and that this matter should be **REMANDED** for further review consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/Michael Hluchaniuk

Date: March 2, 2010                     Michael Hluchaniuk
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 2, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Charles A. Robison, William A. Woodard, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov